IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CR-00-58-T |
| | ) | |
| CHRISTOPHER G. MATHER, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the court is the motion [Doc. No. 147] of defendant to discharge his court-appointed counsel, the Federal Public Defender for the Western District of Oklahoma. After receiving the responses filed by the government and by the Federal Public Defender, the court conducted a March 22, 2005 hearing on defendant's motion. The hearing was conducted by video conference; defendant and counsel Susan Otto, the Federal Public Defender for the Western District of Oklahoma, were present via video conference from the United States Medical Center for Federal Prisoners ("USMCF") in Springfield, Missouri, where defendant is incarcerated. Assistant Federal Public Defender William Early and Assistant United States Attorney Timothy W. Ogilvie appeared in Oklahoma City. Also appearing via video conference was Dr. Brandt, the Chief Psychologist at USMCF.

At the commencement of the hearing, the court stated its understanding that defendant had received medical attention the previous day for self-inflicted injuries, and inquired of Dr. Brandt about defendant's condition to determine defendant's ability to participate in the hearing. Dr. Brandt explained that defendant had cut his arm deeply near the elbow and had ingested razor blades and paper clips. As the record in

this case reflects, defendant has previously repeatedly committed acts of self-mutilation by cutting himself and ingesting razor blades; however, Dr. Brandt reported that the cut inflicted by defendant yesterday was more severe than those treated on other occasions. According to Dr. Brandt, defendant's arm was sutured at USMCF, but emergency medical attention at the community hospital in Springfield was also required because he had swallowed both razor blades and paper clips. The court asked Dr. Brandt if defendant was able to understand and participate in the hearing, and Dr. Brandt replied that defendant was able to do so. The court then asked defendant if he had any reason not to proceed with the hearing, and defendant stated that he did not.

The court noted that, although the motion includes various complaints and allegations, defendant raised two issues in support of his request to discharge counsel: 1) that his current counsel has a conflict of interest in representing him because he has filed a complaint against them with the Oklahoma Bar Association ("OBA"); and 2) that his plea of guilty was involuntary because he lacked the mental competency to enter a knowing and voluntary plea, and he did so only because he thought it was the only means of obtaining treatment for his mental condition. The court noted that the motion was apparently drafted by another individual, an inmate at USMCF,[1] who is not knowledgeable about the case because it contains some arguments and factual allegations which are contrary to the extensive evidence in the record[2]. Notwithstanding these inaccuracies, the court determined that defendant should be permitted to

---

[1] In the motion, defendant had asked that the court appoint the person assisting him to act as his counsel upon the discharge of current counsel. In its January 31, 2005 order [Doc. No. 150], the court denied this request.

[2] For example, the motion refers to defendant as a "brain-damaged child," and the extensive evidence in the record does not indicate that defendant had been determined to have brain damage. Upon inquiry by the court, counsel for defendant and the government confirmed that they had seen no such

proceed with the motion.

The court asked counsel to respond to the two issues, and advised defendant that he would also have the opportunity to personally address the court regarding the allegations and the reasons for his dissatisfaction with his counsel.

With respect to the allegation in the motion that counsel has a conflict of interest in representing defendant because he filed an OBA complaint against them, defendant's counsel advised that they have been notified by the OBA that it has declined to proceed on defendant's complaint, and that the matter has been concluded. Counsel also advised the court, however, that defendant had filed a 28 U.S.C. § 2241 lawsuit in the United States District Court in Missouri, identified as Case No. 03-CV-3001. Although that action challenges his conditions of confinement and does not name his attorneys as defendants, counsel advised that defendant's pleadings in the Missouri lawsuit mentioned his complaint about his counsel in this action. Counsel further advised that the Missouri court record reflects that the court dismissed that lawsuit on March 31, 2003[3]. In addition, counsel advised the court that they have learned that defendant has filed a civil rights action in this court, and it names his current counsel as defendants. Counsel have not yet been served with summons, as the case is proceeding through the court's screening process for *pro se* inmate cases[4]. Therefore, they cannot respond to the allegations in that

---

evidence. Neither is there any evidence to support the allegation in the motion that defendant was under the influence of methamphetamines or LSD at the time the crime was committed.

[3]The court notes that defendant's motion to discharge counsel in this action was not filed until December 17, 2004, more than one year after the dismissal of the Missouri lawsuit.

[4]The court file reflects that this case, CIV-05-178, has been referred to United States Magistrate Judge Gary M. Purcell for initial processing. The file also reflects that the lawsuit was not filed until

complaint.

With respect to the motion argument that defendant's guilty plea was involuntary, counsel noted that his argument is based on the contention that he did not have a separate mental evaluation or hearing to determine if he was competent to proceed to trial. Counsel explained to the court that the decision not to pursue a separate competency examination was initially based on the fact that, when this action was first filed, the government intended to pursue the death penalty. At the time of defendant's arraignment before United States Magistrate Judge Bana Roberts, the government filed a motion for a competency examination. Counsel for defendant objected at that time because of concerns that, if examined by a government psychiatrist, defendant's communications with the psychiatrist would not be protected by privilege. Because of this concern, the Federal Public Defender's office has a practice in such cases of arranging for psychiatric examinations to be conducted by an expert it selects rather than one designated by the government.

As counsel also explained, the record reflects that a hearing was conducted by Magistrate Judge Roberts on the government's request for a competency examination and that defendant was questioned by the judge during the hearing. The record further reflects that the government's motion was denied.

Counsel for defendant also advised the court that they subsequently hired a mitigation expert to examine defendant because of their concern that the death penalty would be pursued. That expert was in contact with defendant, and did not request a competency evaluation. After the government filed a notice that it would not seek the death penalty, counsel for defendant decided to pursue an insanity defense and

---

February 14, 2005, approximately two months after defendant filed the motion to discharge counsel.

filed a formal notice of the intent to do so. Defendant's counsel retained a local psychologist, Dr. Ray Hand, to serve as defendant's expert. Thereafter, the government requested a psychiatric examination, and defendant was examined by Dr. Fallis of Fort Worth, Texas. Counsel for defendant met with Dr. Fallis in Fort Worth to discuss the results of her examination regarding both defendant's mental state at the time of the offense and additional matters regarding defendant.

Defendants' counsel then retained Dr. Louise Beckett, who conducted a psychiatric examination of defendant at defense counsel's request.[5] She was asked by counsel to evaluate defendant's then current mental status as well as his sanity at the time of the offense. Included in her examination findings was the conclusion that defendant is competent. Counsel for defendants stated that they had no basis for challenging defendant's competency to proceed with trial preparation and trial. Moreover, they had no reservations about his competency throughout the proceedings in this case. Counsel for the government also expressed no reservations about his competency.

With respect to defendant's argument that his guilty plea was involuntary because it was motivated solely by his desire to obtain mental treatment, counsel for the government pointed out that, during the hearing on his change of plea, the court questioned defendant at length about the basis for the plea. The transcript of that hearing reflects that defendant admitted his guilt several times during that hearing. *See* transcript of October 2, 2001 change of plea hearing, p.10. Furthermore, upon direct questioning by the court, defendant stated that his plea was not made because of any promise; defendant, in fact, expressed concern about the difficulties caused to his family as a result of his criminal action and

---

[5]The examination reports of Dr. Fallis and Dr. Beckett, as well as all other psychiatric documents, have been filed under seal in this case.

regret that he had killed his stepmother. *Id.* At no time did he suggest that a promise of mental treatment was the basis for his plea.

The court also questioned the defendant at length about his understanding of the consequences of his guilty plea as well as his right to a jury trial. Defendant repeatedly stated that he understood the plea agreement and its terms, and that his plea was voluntary. *Id.,* pp. 7, 9. At no time did defendant exhibit any lack of understanding or comprehension regarding the proceedings; neither did he express any hesitation with regard to his admission of guilt.

After hearing from the attorneys, the court offered defendant the opportunity to add any comments or arguments in support of his motion and to further explain the basis for his dissatisfaction with his current counsel. In response, defendant stated that, over the past year, he had been on a "self-destructive" path and that he sometimes lashed out at others. He expressly stated that he would like to "rescind" his complaints about his lawyers, and stated that, if they are willing, he would like his current lawyers to continue to represent him.

Acknowledging defendant's withdrawal of his request to discharge his counsel, the court also acknowledged the dedication and commitment of defendant's counsel and their conscientious effort on his behalf. Moreover, the court finds that the evidence in the extensive record and presented in connection with this motion would not have supported discharging his counsel. The legal standards governing a motion to substitute or discharge counsel are clear: "To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." United States v. Anderson, 189 F.3d 1201, 1210 (10th Cir. 1999). Good cause for substitution of counsel is not shown by the fact that counsel refused to

structure a defense as defendant wanted, or by counsel's failure to blindly follow defendant's instructions. *Id., citing* United States v. Padilla, 819 F.2d 952, 956 (10th Cir. 1987).

In this case, those standards are not met. Although defendant filed an OBA complaint against counsel, he did not do so until counsel had represented him for well over four years; furthermore, the OBA declined to pursue the complaint. The pending civil rights claim in this court has not proceeded beyond the initial screening stages, and defendant has now expressed his intent not to pursue that claim. Furthermore, prior to the filing of the motion to discharge counsel, defendant appeared before this court on several occasions and never indicated any disagreement or dissatisfaction with counsel.

The court finds no fault in counsel's decision, at the early stages of this case when the potential sentence included the death penalty, to avoid a separate competency examination by the government's psychiatrist. In fact, the record reflects that, after the government declined to pursue the death penalty, defendants' counsel actively sought and obtained psychiatric examinations and evaluations on defendant's behalf. The court agrees that the extensive record regarding defendant's mental health reflects no evidentiary basis for questioning defendant's competency to assist his counsel in trial preparation or trial and, although defendant continues to demonstrate a lack of recovery from his diagnosed mental condition, the defendant has never exhibited a lack of competency in connection with any court appearance.

The record also supports the voluntariness of defendant's guilty plea. His repeated admission of guilt and his denial that the plea was based on anything other than his guilt are evidenced by the transcript of his change of plea hearing. At no time did he exhibit a lack of understanding or knowledge regarding the consequences of his plea, and he expressed no reservation about entering the plea.

The court also notes that the sentencing of defendant in accordance with 18 U.S.C. § 4244(d) was

7

agreed to by the government and approved by the court only after lengthy negotiations initiated by defendant's counsel.  Contrary to the allegations in the motion to discharge counsel, there is no evidence that defendant was coerced into the plea in order to obtain mental treatment, and the record directly refutes any such contention.

Having thus considered the evidence as well as defendant's expressed desire to withdraw his motion, the motion [Doc. No. 147] is DENIED.

IT IS SO ORDERED this  22nd  day of April, 2005.

RALPH G. THOMPSON
UNITED STATES DISTRICT JUDGE